
UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RODNEY HERMANSON,<br><br>     Plaintiff,<br><br>     v.<br><br>CENTURY NATIONAL INSURANCE COMPANY,<br><br>     Defendant. | Case No. 2:19-cv-00656-RFB-EJY<br><br>**ORDER** |

### I.     INTRODUCTION

Before this Court for consideration is Defendant's Motion for Summary Judgment [ECF No. 80], Defendant's Motion for Declaratory Judgment [ECF No. 81], and Plaintiff's Motion for Partial Summary Judgement [ECF No. 84].

### II.    PROCEDURAL BACKGROUND

Plaintiff filed his complaint in Clark County District Court on March 21, 2019. ECF No. 1-2. Defendant Century National removed the case to federal court on April 16, 2019. ECF No. 1. Plaintiff amended the complaint on May 3, 2019. ECF No. 9. Century National moved for a more definite statement on May 16, 2019. ECF No. 18. Century National also filed a motion to dismiss the complaint on that same date. ECF No. 19. The Motion to Dismiss was denied by this Court on February 28, 2020.

Defendant moved for summary judgement on January 6, 2020. ECF No. 34. Plaintiff counter-moved for partial summary judgment on January 30, 2020. ECF No. 38. Both motions were denied by the Court as premature on February 28, 2020. ECF No. 48.

Defendant filed a motion for Summary Judgment and a Motion for Declaratory Judgment on November 2, 2020. ECF No. 81. Plaintiff filed a Motion for Partial Summary Judgment on November 16, 2020. ECF No. 84. Both motions were fully briefed as of December 18, 2020. See ECF No. 92.

Oral argument was held on these motions on September 17, 2021. ECF No. 94. This written order follows.

### III. FACTUAL BACKGROUND

#### a. Undisputed Facts

The Court finds the following facts to be undisputed.

##### i. The Insurance Policy

It is undisputed that on or about April 21, 2015, Century National issued an insurance policy to Mr. Hermanson. The policy was a homeowner's policy with policy number FNV0009386. The policy provided coverage in the amount of $100,000 in the event of a personal injury occurring at property located at 4665 Welter Avenue, Las Vegas, Nevada 89104. The policy was effective from April 21, 2015 to June 2, 2016. The policy was governed by Nevada law, and Mr. Hermanson and/or other insureds had complied with all obligations under the policy, including the payment of all premiums due under the policy.

On August 27, 2015, Plaintiff had two relevant insurance policies: an auto policy and a homeowner's policy. The auto liability policy was with Standard Fire Insurance Company, while the homeowner's insurance was with Century National Insurance Company. In relevant part, the personal liability portion of the homeowners' policy states that:

> Coverage L-Personal Liability. If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies we will . . .provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

The policy also includes medical payments coverage (Coverage M). It is undisputed that there is an automobile exception to the homeowners' policy. In relevant part, this exception states:

> Coverage L - Personal Liability and Coverage M – Medical Payments to Others do not apply to "bodily injury" or "property damage": e. arising out of: (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured"

### ii. Circumstances of Seth Franz's Death

On August 27, 2015, Mr. Hermanson was caring for his four-year old grandson Seth Franz. After having lunch, Mr. Hermanson drove Seth back to his home at the property. It was an extremely hot summer day. Mr. Hermanson went into the house and did not realize that Seth had remained in the vehicle. Several hours later Hermanson realized, after receiving a call from Seth's mother, that Seth had been left in the vehicle. Although Mr. Hermanson frantically attempted to save his grandson, he was unable to do so. Seth was pronounced dead at the Sunrise Pediatric Emergency room. The coroner's report describes the circumstances of Seth's death as follows:

> Circumstances of Death: At approximately noon on 08/27/15 the decedent's grandfather picked him up from his mother's residence and was going to take him to visit his great grandmother. They visited the great grandmother and went to lunch. The grandfather planned to drop the decedent back off at his mother's residence on the way home but out of habit drove to his residence. The decedent was believed to be sleeping at that time as the grandfather did not hear him and completely forgot that he was with him. The grandfather parked his vehicle in the driveway and locked it. He went inside his residence and went about his day. The decedent's mother called the grandfather at approximately 1816 hours to find out when he was bringing the decedent home. He realized the decedent must still be inside the vehicle. He went to the vehicle, found the decedent in the back seat gurgling, and ran him inside the house and put him in the cool shower for approximately five minutes. He called 911. Police and paramedics arrived and transported him to Sunrise Pediatric Emergency Room, arriving at approximately 1845 hours. Life saving measures were met with negative results. Death was pronounced by Dr. Vergara at 1902 hours.

The coroner's report also states that the immediate cause of death was hyperthermia.

### iii. The Wrongful Death Lawsuit

It is undisputed that on April 11, 2016, Seth's father Alan Franz filed suit against the subject Plaintiff in State Court. The suit included two causes of action: (1) wrongful death, (2) negligence. Following the first notice of loss on July 20, 2016, Century National conducted an investigation. On August 30, 2016, Defendant sent a letter to Plaintiff denying coverage citing the fact that Seth's injuries arose out of the use of the automobile and citing the auto exclusion of the homeowner's policy as the basis for the declination.

On August 2, 2018, Mr. Franz (Seth's father) entered into a covenant not to execute with the Plaintiff. The key points of the agreement were: (1) Plaintiff's auto carrier Standard Fire Insurance agreed to pay Seth's father the auto policy limit of $50,000, (2) Plaintiff would give Seth's father the title to a collectible car, (3) Plaintiff agreed to no longer defend the wrongful death suit and allow default judgment to be entered against him, (4) Standard Fire would be excused from any further duty under the auto policy, (5) Seth's father would not execute on any judgment entered against Plaintiff or Standard Fire, (6) Seth's father would however eventually execute a satisfaction of judgment in favor of Plaintiff once the judgement is either satisfied or once all collection efforts have been concluded against any parties who may be liable for the judgment, including National General Insurance, of which Century National is a member.

The parties entered a stipulation to strike Plaintiff's answer in the wrongful death suit and allowed default to be entered.

### IV.  LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

V. **DISCUSSION**

Plaintiff moves for partial summary judgment as to the duty to defend claim. Defendants move for summary judgment regarding each of Plaintiff's causes of action, as well as for a declaration that Defendants did not breach their contract or violate any duty to the Plaintiff.

### a. Construction of Insurance Contracts Under Nevada Law

Generally, interpretation of an insurance contract is a question of law, to be decided by the court. Shelton v. Shelton, 78 P.3d 507, 510 (Nev. 2003), Grand Hotel Gift Shop v. Granite St. Ins., 839 P.2d 599, 602 (Nev. 1992). Under Nevada law, the terms of a contract must be given their plain meaning. See Traffic Control Servs. v. United Rentals Northwest, Inc., 87 P.3d 1054 (Nev. 2004). In interpreting an insurance policy, specifically, courts must examine the language from the viewpoint of one not trained in law or insurance, "giving the terms their plain, ordinary and popular meaning." McDaniel v. Sierra Health & Life Ins. Co., 53 P.3d 904, 906 (Nev. 2002). Any ambiguity in the terms of an insurance contract shall be resolved in favor of the insured and against

the insurer, Farmers Ins. Exch. v. Young, 832 P.2d 376, 377 (Nev. 1992), and consider not merely the language of the policy, but also the intent of the parties, the subject matter of the policy, and the circumstances surrounding its issuance, in order to implement the reasonable expectations of the insured. See Nat'l Union Fire Ins. Co. of State of Pa,. v. Reno's Executive Air, Inc., 682 P.2d 1380, 1383-1384 (Nev. 1984) Sullivan v. Dairyland Ins. Co., 649 P.2d 1357 (Nev. 1982).

While clauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer. Nat'l Union Fire Ins. Co. of State of Pa,. v. Reno's Executive Air, Inc., 682 P.2d 1380, 1383 (Nev. 1984). When an insurer restricts coverage of a policy, it should employ language that clearly and distinctly communicates to the insured the nature of the limitation. Vitale v. Jefferson Ins. Co., 5 P.3d 1054, 1057 (Nev. 2000), United Natl Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1160-1156 (Nev. 2004).

Finally, whether or not a document is ambiguous is a question of law for the court. Margrave v. Dermody Props., 878 P.2d 291. 293 (Nev. 1994). A contract is considered to be ambiguous where it is reasonably susceptible to more than one interpretation. Shelton v. Shelton, 78 P.3d 507, 510 (Nev. 2003).

### b. The Motor Vehicle Exception

In Nevada, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." Laguerre v. Nev. Sys. of Higher Educ., 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")). In this case, there is no dispute as to the first two

elements. The material factor is whether the contract has been breached. This question turns first on whether the policy's motor vehicle exemption precludes recovery based on the facts discussed above.

Defendant argues that the motor vehicle exclusion clearly and unambiguously applies and precludes Plaintiff from coverage under the policy because this incident involves the "use" of a motor vehicle. Defendant further argues that Nevada courts have held that automobile use exclusions with almost identical language preclude recovery under homeowners' and commercial general liability insurance. See, e.g., Senteney v. Fire Ins. Exch., 707 P.2d 1149, 1151 (Nev. 1985); Vitale v. Jefferson Ins. Co., 5 P.3d 1054, 1057 (Nev. 2000), Hansen v. State Farm Mut. Auto Ins. Co., No. 2:10-cv-01434 (D. Nev. 2012), Allstate Indem Co v. Russell, 345 F. App'x 264 (9th Cir. 2009). Plaintiff argues that the exclusion does not apply because the car was only the situs of, and not the cause of Seth Franz's injuries. They substantiate this argument by pointing to facts known by the Defendant, such as the fact that there was only a four-degree difference between the temperature in the car and the temperature outside the car.

Defendant argues that the purported lack of ambiguity in the clause should lead the Court to find that the motor vehicle exception *does* apply. The Court agrees that the word "use" is unambiguous. The plain meaning of the word "use" indicates taking, holding, employing, or deploying an object as a means of accomplishing or achieving something. See "use", Oxford Dictionaries, Oxford University Press (2021). "Use" plainly requires action. In this context, the word "use" precludes the exception from applying because no action related to the car was employed as part of the cause of the injury. It is clear that a "use" of the car did not cause the underlying injury: it was merely the site of the injury. But even assuming that the term "use" is ambiguous where the car is the site but not the direct and proximate cause of the injury, Nevada

- 7 -

law dictates that the ambiguity be interpreted in favor of coverage. As a result, the exception will not apply here in either case.

The Nevada Supreme Court has not explicitly ruled on the question of whether a motor vehicle use exception applies to exclude coverage under a personal liability provision of a homeowners' insurance policy when a child is left unattended on a hot day. However, the Nevada Supreme Court has endorsed the principle that a homeowner's policy could provide coverage even where there is a nexus between the vehicle and the injury. Senteney v. Fire Ins. Exch., 707 P.2d 1149, 1151 (Nev. 1985). In Senteney, Plaintiff sought declaratory relief that his homeowner's policy covered injuries sustained in a motorcycle accident involving the insured's vehicle. The insured alleged that he was entitled to recover under theories of negligent entrustment, entrustment of an unsafe and dangerous instrumentality, and provision of unsafe equipment in connection with negligent entrustment because the helmets of the motorcycle had been modified, the tires were overinflated, and both tires were "bald." The Nevada Supreme Court concluded that in that situation, the injury *did* arise "out of the ownership, maintenance, operation or use of the insured vehicle" and therefore was plainly precluded by the policy. Id. However, the Court also recognized that "circumstances could occur that would permit coverage" by the homeowner's policy where a motor vehicle was involved. Id.

Defendants cite to two other Nevada cases where the Court found that the motor vehicle exception was upheld as unambiguous. However, both cases involve injury arising from straightforward use of a motor vehicle. In Vitale v. Jefferson Ins. Co., 5 P.3d 1054, 1057 (Nev. 2000), two cars collided in a parking lot. In Hansen v. State Farm Mut. Auto, 2:10-cv-01434-KJD-RJJ (D. Nev. 2012), the Court found that the motor vehicle use exception applied where all injuries in the case arose from an incident where one individual rammed his car into others. ("Any

- 8 -

negligent actions Brad took that led to the victim's injuries took place from behind the wheel of his jeep.") Allstate Indem Co v. Russell, 345 F. App'x 264 (9th Cir. 2009) upholds the motor vehicle exception in a factual scenario involving the death of a minor child in a car accident. These cases share the commonality that injury arose while the car was being driven or was moving in some manner. There is not a plausible argument that the car was not in "use" during the time when the injuries occurred or that the injuries did not arise from "use" of a motor vehicle in some way. As a result, the exception was applied in these cases. That is not the case here.

In this case, the injury was separate and distinct from the "use" of the motor vehicle under the term's plain meaning. Here, the car was merely the situs of the injury. Seth Franz's injury was unrelated to the use of the car: nothing about the nature of the parked car at the time of the injury distinguishes it from any other location on the property where a similar injury could have occurred. Injury in this case could have occurred had Seth been locked out of the house and stuck on the outdoor patio with no water, in an unventilated storage shed, or in any other location on the property. This is distinct from a scenario where Seth Franz's death could have occurred only inside the car: for instance, had he died from carbon monoxide inhalation.

In light of both the language of this policy and the factual scenario that occurred here, the Court finds that the motor vehicle exception to the homeowner's insurance policy does not preclude coverage in this case.

### c. The Duty to Defend

Plaintiff has alleged both breach of the contractual duty to defend and the contractual duty to indemnify. Plaintiff has moved for partial summary judgment only as to the duty to defend claim, arguing that Defendant breached its contractual duty to defend because there was a clear possibility of coverage and under Nevada state law, an insurer retains its duty to defend even where

there was only a mere possibility of coverage. Accordingly, the Court first turns to this contractual obligation.

Under Nevada law, an insurer bears a duty to defend whenever it ascertains facts which give rise to the potential of liability under the policy. United Natl Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1158 (Nev. 2004). If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of coverage. Id.

The fact that the circumstances involved in the case are covered by the homeowner's policy at issue is dispositive of the duty to defend claim: because the injury was covered by the policy, Defendants had a duty to defend Plaintiff in the underlying litigation. However, Defendant was also aware of both facts and law that may have given rise to the potential of liability under the policy under the standard described above. Defendant was aware that the Nevada Supreme Court has not explicitly ruled on the question of whether a motor vehicle use exception applies to exclude coverage under a personal liability provision of a homeowners' insurance policy when a child is left unattended on a hot day. See ECF No. 80, Defendant's Motion for Summary Judgment and Declaratory Relief, 14. They were also aware that the question of whether the exemption applied had been litigated in much closer cases in the state of Nevada. See Id. at 14-16. While they appeared to rely on a California case with a similar fact pattern which upheld the exception, see Prince v. United Nat'l lns. Co., 47 Cal. Rptr. 3d 727 (Cal. App. 2006), they also appear to have been aware of cases from other jurisdictions that rejected the exception. As discussed above, Defendant was aware of unique circumstances in this case that pointed to the potential of liability. These facts indicate that under the standard established by Nevada law, Defendant had a duty to defend and breached that duty by refusing to defend the Plaintiff in the lawsuit against him.

### d. The Duty to Indemnify

The duty to indemnify is narrower than the duty to defend. United Natl Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1158 (Nev. 2004). The duty to indemnify arises when an insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy or when the resulting loss or damage *actually* falls within a policy's coverage. Century Surety Co. v. Andrew, 432 P.3d 180, 184 (Nev. 2018) (internal citations omitted).

Defendants breached their contractual duty when they refused to indemnify Plaintiff in the suit against him for the wrongful death of Seth Franz. As established above, the incident underlying the subject litigation is not exempted from coverage by the motor vehicle exception the homeowner's policy. As a result, the Defendant did have a duty to indemnify.

### e. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing in denying coverage under their contractual duties to defend and indemnify. The Court's conclusions regarding the duties to defend and indemnify are not dispositive of the bad faith issue. See Century Sur. Co. v. Andrew, 134 Nev. 819 (Nev. 2018). To prevail on a theory of breach of the covenant of good faith and fair dealing, a plaintiff must establish each of the following: (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. Perry v. Jordan, 900 P.2d 335, 338 (Nev. 1995). Bad faith claims involve an actual or implied awareness of the absence of a reasonable basis for denying the befits of the policy. American Excess Ins. Co. v. MGM Grand Hotels, 729 P.2d 1352, 1354-1355 (Nev. 1986). The ultimate test of bad faith is whether the insurer's conduct was unreasonable under all of the circumstances. Madrigal v. Allstate Indem.

Co., 697 F. App'x 905, 908 (9th Cir. 2017) (citing Barickman v. Mercury Cas. Co., 2 Cal.App.5th 508, 206 Cal.Rptr.3d 699, 708 (2016)), see also House v. State Farm Fire & Cas. Co., 17 F. App'x 684, 685 (9th Cir. 2001) ("[B]efore an insurer can be found to have acted tortiously (i.e. in bad faith), for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted unreasonably or without proper cause.") (internal citations omitted).

Because the facts regarding the duty to defend and duty to indemnify are undisputed and the facts do not permit differing inferences, the Court may make a judgment on the bad faith claim as a matter of law. United Fire Ins. Co. v. McClelland, 780 P.2d 193, 197 (Nev. 1989). ("However, a jury question on insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of insurer's conduct."), see also House v. State Farm Fire & Cas. Co., 17 F. App'x 684, 685 (9th Cir. 2001) (citing Chateau Chamberay Homeowners' Ass'n. v. Associated Int'l Ins. Co., 108 Cal.Rptr.2d 776, 785 (Cal. App. 2001) ("Reasonableness is a question of law that may be decided by the court if only one inference can be drawn from the undisputed facts."))

Because the duty to defend and the duty to indemnify are subject to different standards under Nevada law, see Section V(c),(d), supra, the Court will evaluate these claims separately. As discussed above, an insurer bears a duty to defend whenever it ascertains facts which give rise to the potential of liability under the policy. United Natl Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1158 (Nev. 2004). The duty to defend is broader than the duty to indemnify. Id. The Court finds that the insurer denied the duty to defend in bad faith. Under the capacious requirements of the duty to defend, it is clear that Defendant ascertained facts which gave rise to the potential of liability under the policy. While the underlying circumstances of the litigation involved a motor vehicle and there is an unresolved question of state law regarding the exception, Defendants were

certainly on notice of at least the potential for liability in this situation. Nevada law has set forth that the remedy for the insurer in situations where they are unsure of an ultimate determination under the duty to defend is to defend the insured within the limiting condition that it does not waive any right to later deny coverage based on terms of the policy under a reservation of rights. Century Sur. Co. v. Andrew, 134 Nev. 819, 826 (Nev. 2018), (citing Woo v. Fireman's Fund Ins. Co., 164 P.3d 454, 460 ("If the insurer is uncertain of its duty to defend, it may defend under a reservation of rights and seek a declaratory judgment that it has no duty to defend. Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a declaratory judgment, the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach.") (internal citations omitted)). The insurer may later seek a declaratory judgment clarifying the requirements of coverage as a matter of law. Id. Instead of pursuing this alternative, Defendant denied coverage under the duty to defend where Defendant knew there was a potential for liability. In this situation, this amounts to a bad faith denial of the duty to defend because it was unreasonable under all circumstances. However, because the parties have not sufficiently briefed the total costs of defense, the court cannot find damages as a matter of law at this time. Therefore, this issue requires further adjudication. Additionally, when an insurer violates its duty of good faith and fair dealing, it is liable to pay all compensatory damages proximately caused by its breach, however, punitive damages require proof of motive and intent to violate a duty. Allstate Ins. Co. v. Miller, 212 P.3d 318, 327-328 (Nev. 2009). As a result, the issue of damages remains for a factfinder at an evidentiary proceeding.

In contrast, the duty to indemnify arises when an insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy or when the resulting loss or damage *actually* falls within a policy's coverage. Century Surety Co. v. Andrew, 432 P.3d

180, 184 (Nev. 2018) (internal citations omitted). Here, while the loss does fall within the policy's coverage, the Court finds that there was no wrongful denial of the duty to indemnify that could plausibly give rise to a claim of bad faith. See Powers v. United Servs. Auto. Ass'n, 962 P.2d 596, 620 (Nev. 1998) (stating in the context of the duty to indemnify that "[t]he vital element of the so-called 'bad faith' tort is the insurance company's wrongful conduct, not in merely denying a claim incorrectly and, therefore, without 'proper' cause, but in denying the claim wrongfully, without any reasonable basis or with the knowledge that it is denying a rightful claim…") While the claim was improperly denied, because there was a close and open question of law in the case, the Court finds that it was not unreasonable to deny the claim. See Id. ("A mere incorrect or "improper" denial of a claim is not tortious. A company may, in the utmost of good faith and propriety, deny a claim, only to have it proven later, in court, that its denial of the claim was improper and that the claimant was, indeed, entitled to indemnity.") As a result, the breach of the duty to indemnify did not amount to bad faith.

### f. Unfair Claims Practices Act

Plaintiff alleges that Defendant's action entitles them to relief pursuant to Nevada's Unfair Claims Practices Act, NRS § 686A.310. NRS § 686A.310(2) provides that an "insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice." NRS § 686A.310(1) sets forth various activities considered to be an unfair practice. The Court's conclusions regarding the duties to defend and indemnify, as well as the bad faith claims are not dispositive of this issue. Unlike the cause of action for bad faith, the provisions of NRS § 686A.310 "address the manner in which an insurer handles an insured's claims whether or not the claim is denied." Zurich Am. Ins. Co. v. Coeur Rochester, Inc., 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010) (citing Pioneer Chlor Alkali Co., Inc.

v. Nat'l Union Fire Ins. Co., 863 F.Supp. 1237, 1243 (D.Nev.1994). Plaintiff's complaint does not clearly state which sections of NRS § 686A.310 were violated by Defendant. However, the Court will evaluate the discernable claims in the light most favorable to the non-moving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

Plaintiff alleges that Defendant breached NRS § 868A.310 by failing to promptly communicate with its insured regarding its decision to deny coverage in this case. NRS § 868A.310(1)(d) states that failure to "affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured" is considered an unfair practice. Plaintiff claims that the delay in processing Plaintiff's claim was unreasonable because of the context. However, in providing standards applicable to insurers, NAC § 686A.675 advises that claims must be accepted or denied "within 30 working days after receipt by the insurer of properly executed proofs of loss…" Here, it is undisputed that the Defendants denied the claim after 29 working days, falling within the prescribed time frame. As a result, the Court finds that summary judgment in favor of the Defendants is appropriate on this claim.

Plaintiff alleges that Defendant breached NRS § 686A.310(1)(c) by failing to undertake a reasonable investigation of Plaintiff's claim and because it failed to adopt and implement reasonable standards. NRS § 686A.310(1)(c) states that failure to "adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies" is considered an unfair practice. Here, there is a genuine dispute as to the material fact regarding the reasonableness of Defendant's practices and investigation. This issue remains for trial before a jury.

VI. **CONCLUSION**

**IT IS THEREFORE ORDERED** that [ECF No. 80] Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

1 **IT IS FURTHER ORDERED** that [ECF No. 81] Defendant's Motion for Declaratory Judgment is DENIED.

**IT IS FURTHER ORDERED** that [ECF No. 84] Plaintiff's Motion for Partial Summary Judgment is GRANTED.

As several issues remain for further adjudication and trial, Parties may submit a joint scheduling order concerning the remaining issues within two weeks of the issuance of this order.

**IT IS FURTHER ORDERED** that a status conference is set in this case for October 22, 2021, at 10:30 am in LV Courtroom 7C buy videoconference before Judge Richard F. Boulware, II.  The instruction regarding videoconference appearance to be issued.

**DATED**: September 30, 2021.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**